IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| OHIO CASUALTY INSURANCE COMPANY, ) <br> d/b/a OHIO CASUALTY GROUP, ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> RLI INSURANCE COMPANY and ) <br> BROOKS, PIERCE, MCLENDON, ) <br> HUMPHREY & LEONARD, L.L.P., ) <br> Defendants. ) | 1:04CV483 |

MEMORANDUM OPINION

Beaty, District Judge.

This matter is before the Court on a Motion to Remand [Document #7] by Plaintiff Ohio Casualty Insurance d/b/a Ohio Casualty Group ("Ohio Casualty") seeking to remand this case back to the Superior Court of Guilford County, North Carolina. The case was removed to this Court by Defendant RLI Insurance Company ("RLI") pursuant to 28 U.S.C. § 1332(a) on the grounds of diversity jurisdiction. In its Motion to Remand, Ohio Casualty contends that removal was improper pursuant to 28 U.S.C. § 1441(b) because Defendant Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P. ("Brooks Pierce"), a named defendant in the state court action, was properly joined and served as a defendant and is a citizen of North Carolina, the state in which this case was originally brought. In its Brief in Opposition to Plaintiff's Motion to Remand, RLI contends that this matter was properly removed pursuant to 28 U.S.C. § 1332(a), and that 28 U.S.C. § 1441(b) is inapplicable because Defendant Brooks Pierce was either fraudulently joined, a nominal party, or misaligned as a defendant in the state court action. For the reasons set forth herein, the Court will deny Plaintiff Ohio Casualty's Motion for Remand [Document #7] and will retain jurisdiction of this matter.

I.   FACTS

In 1995, Tindall Corporation ("Tindall") constructed a pedestrian walkway at the Lowe's Motor Speedway in Concord, North Carolina. On May 20, 2004, the walkway collapsed and injured numerous pedestrians. This resulted in several lawsuits being filed against Tindall. At the outset of the trial, Liberty Mutual, which is not a party to the present action, undertook the defense of Tindall. Liberty Mutual had previously issued to Tindall both a $1 million commercial general liability policy and a $1 million umbrella excess liability policy. In conjunction with Liberty Mutual, RLI, an Illinois corporation, had issued Excess Umbrella Policy coverage to Tindall in the sum of $40 million beyond the $1 million of general liability and $1 million excess liability coverage provided to Tindall by Liberty Mutual. In addition, Ohio Casualty, an Ohio corporation, also issued an excess coverage insurance policy to Tindall with limits of $19 million beyond the applicable underlying insurance coverage provided by Liberty Mutual and RLI. Thus, liability coverage was provided as follows: $2 million by Liberty Mutual, the next $40 million by RLI, and the next $19 million by Ohio Casualty.

On May 3, 2002, Liberty Mutual notified Tindall that once Liberty Mutual's $1 million commercial general liability and $1 million umbrella excess liability policy were exhausted by the payment of defense costs or settlements related to the underlying claims filed by the injured pedestrians, it intended to terminate its defense of Tindall and to withdraw from any further defense of Tindall in the lawsuits. Although RLI and Ohio Casualty's policies provided indemnity coverage only, they mutually agreed in June 2002 to defend Tindall upon Liberty Mutual's withdrawal from the defense of Tindall. RLI contends that neither RLI nor Ohio Casualty had a contractual obligation to defend Tindall in any civil action against it, but that RLI and Ohio Casualty voluntarily

retained Brooks Pierce to defend Tindall. Ohio Casualty contends that as part of the agreement between Ohio Casualty and RLI, they mutually agreed to share equally all fees and expenses of Brooks Pierce. Ohio Casualty alleges that they specifically "agreed that Ohio Casualty would pay one-half of the defense fees and expenses prior to Ohio Casualty's indemnity obligations being triggered, and that RLI would continue to pay one-half of Brooks Pierce's fees and expenses after RLI's indemnity policy limits were exhausted." (See Compl. ¶ 17.) RLI admits that it received a draft letter of engagement dated June 21, 2002, from Brooks Pierce relating to its representation of Tindall, but RLI denies that it signed that letter of engagement or agreed to the terms set forth therein. Nevertheless, RLI admits that as the litigation progressed, Brooks Pierce, pursuant to the sharing agreement between Ohio Casualty and RLI, billed both Ohio Casualty and RLI for fifty percent (50%) each of the costs of defending Tindall, and that Ohio Casualty and RLI each paid Brooks Pierce fifty percent (50%) of the defense costs incurred on behalf of Tindall through July 31, 2003.

In or around June 2003, however, RLI advised Ohio Casualty that RLI would no longer contribute any portion of the costs to defend Tindall after July 31, 2003 because the applicable limits of RLI's excess coverage policy had been exhausted. Ohio Casualty contends that as a result of RLI's continued refusal to make any further payments toward Brooks Pierce's fees and expenses, Ohio Casualty has been forced to pay the entire amount of Brooks Pierce's fees and expenses for defending Tindall since July 31, 2003, including the fifty percent (50%) of Brooks Pierce's fees and expenses that RLI had agreed to pay "after RLI's indemnity policy limits were exhausted."

On April 26, 2004, Ohio Casualty filed a civil action in the Superior Court of Guilford County, North Carolina in which it named both RLI and Brooks Pierce as defendants. Ohio

Casualty's Complaint included a first cause of action against RLI based upon RLI's alleged breach of the agreement between them to mutually share in the fees and expenses of Brooks Pierce's defense of Tindall, including fifty percent (50%) of those costs after RLI's indemnity coverage was exhausted. Ohio Casualty also asserted a second cause of action seeking declaratory relief as to the rights, status, and legal relations between itself, RLI, and Brooks Pierce so as to resolve what Ohio Casualty contends is a substantial controversy between it and RLI concerning RLI's contractual obligations to pay fifty percent (50%) of Brooks Pierce's fees and expenses for defending Tindall. Brooks Pierce is named as a defendant solely with respect to Ohio Casualty's request for declaratory relief. Ohio Casualty's declaratory relief action in state court specifically requested that the Court declare that RLI has a contractual duty to pay fifty percent (50%) of Brooks Pierce's fees and expenses for defending Tindall in the underlying litigation and further declare that RLI is required to reimburse Ohio Casualty for all of the fees and expenses of Brooks Pierce that Ohio Casualty paid which RLI was otherwise obligated to pay because of their sharing agreement.

On May 28, 2004, RLI filed a Notice of Removal [Document #1] with the Clerk of the Middle District of North Carolina and the Clerk of the Superior Court of Guilford County, North Carolina. RLI also filed an Answer to Plaintiff's Complaint [Document #4], in which RLI denies that it has breached any agreement with Ohio Casualty and further denies that Ohio Casualty is entitled to any declaratory relief. Defendant Brooks Pierce also filed an Answer, but in its Answer, Brooks Pierce essentially admits all of the allegations in the Complaint, indicating that Brooks Pierce apparently agrees with Ohio Casualty regarding the obligations of the parties with respect to the agreement between Ohio Casualty and RLI to pay Brooks Pierce for defending Tindall, as well as RLI's alleged breach of that agreement. In its Answer, Brooks Pierce also includes its own

4

Crossclaims against RLI based upon RLI's failure to pay Brooks Pierce's fees and expenses as previously agreed.

On the same day that Brooks Pierce filed its Answer and Crossclaims, Ohio Casualty filed a Motion to Remand [Document #7], requesting that this matter be remanded back to the Superior Court of Guilford County, North Carolina. In support of this motion, Ohio Casualty contends that removal was improper pursuant to 28 U.S.C. § 1441(b) because Brooks Pierce is a party in interest properly joined and served as a defendant, and is a citizen of the state of North Carolina, where this action was originally brought. RLI contends, however, that removal is nevertheless appropriate because Brooks Pierce was fraudulently joined, is a nominal party, and is misaligned as a defendant. In evaluating these contentions, the Court will first consider the applicable legal standards, and will then apply those standards in the present case.

II.    MOTION TO REMAND

    A.    Applicable Legal Standards

Removal in this case is governed by 28 U.S.C. § 1441, which allows defendants to remove to federal court any action over which the federal court would have original jurisdiction, including jurisdiction on the basis of diversity. Diversity jurisdiction, in turn, is defined by 28 U.S.C. § 1332(a), which provides that federal district courts have original jurisdiction over civil actions between citizens of different States where the matter in controversy exceeds $75,000.00. In the present case, there is no dispute that RLI sought removal of this case pursuant to 28 U.S.C. § 1441, in conjunction with RLI's allegation of diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). There

5

is also no question that the amount in controversy exceeds $75,000.00,[1] and the parties concede that there is complete diversity as required by 28 U.S.C. § 1332(a), because Plaintiff Ohio Casualty is a citizen of Ohio, Defendant RLI is a citizen of Illinois, and Defendant Brooks Pierce is a citizen of North Carolina.

However, 28 U.S.C. § 1441(b) provides that a civil action based on diversity jurisdiction is removable "only if none of the parties in interest properly joined and served as defendants is a citizen of the state in which such action is brought." 28 U.S.C. § 1441(b). In this case, Defendant Brooks Pierce is a citizen of North Carolina, where this action was originally brought. Therefore, the issue to be resolved in determining whether to remand this case is whether Brooks Pierce is properly considered as a defendant in this case, such that 28 U.S.C. § 1441(b) would bar removal and require remand, even though jurisdiction would otherwise exist pursuant to 28 U.S.C. § 1332(a). However, if Brooks Pierce is not properly joined or aligned as a defendant, then 28 U.S.C. § 1441(b) would not bar removal, and remand would not be necessary.

In evaluating jurisdiction based upon diversity, the Supreme Court has held that federal courts "must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." Navarro Sav. Ass'n v. Lee, 446 U.S. 458, 461, 100 S. Ct. 1779, 1782, 64 L. Ed. 2d 425 (1980). "Based on this general principle, federal courts have developed what is termed the 'fraudulent joinder' doctrine to ensure that diversity is not defeated by the joinder of

---

[1] As part of the Notice of Removal, RLI attached an affidavit of Brian J. Casey, Vice President and Claim Counsel for RLI, in which he swears that based upon Ohio Casualty's claim against RLI and upon his monitoring of the defense being provided to Tindall by Brooks Pierce, RLI's alleged liability in this case exceeds the diversity jurisdiction amount of $75,000.00, exclusive of interest and costs. The parties do not dispute this issue.

parties against whom the plaintiff has no reasonable hope of recovery." 17th St. Assocs., LLP v. Markel Int'l Ins. Co., 373 F. Supp. 2d 584, 594-95 (E.D. Va. 2005).[2]

In addition, even if there is a possible cause of action against an in-state defendant, it is the duty of federal courts "to look beyond the pleadings and arrange the parties according to their sides in the dispute." Indianapolis v. Chase Nat'l Bank, 314 U.S. 63, 69, 62 S. Ct. 15, 17, 86 L. Ed. 47 (1941) (internal quotations omitted). The Court of Appeals for the Fourth Circuit has interpreted Indianapolis as "specifically requir[ing] the district court to ascertain the 'collision of interests' from the 'principal purpose of the suit, and the primary and controlling matter in dispute' and to 'arrange the parties according to their sides in the dispute.'" United States Fidelity & Guar. Co. v. A & S Mfg. Co., 48 F.3d 131, 133 (4th Cir. 1995) (quoting Indianapolis, 314 U.S. at 69, 62 S. Ct. at 17). "Application of the principal purpose test entails two steps. First, the court must determine the primary issue in the controversy. Next, the court should align the parties according to their positions with respect to the primary issue." Id. After adjusting the alignment as necessary, the court should then evaluate the relevant diversity jurisdiction issues.

"Realignment of the parties usually will have the effect of defeating jurisdiction; the rule works both ways, however, and jurisdiction will be sustained if diversity exists when the parties are aligned properly, even though it is lacking on the face of the pleadings." 13B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3607 at 431 (2d ed. 1984). Thus, in the appropriate circumstances, courts will realign the parties and will retain jurisdiction based on the

---

[2] The term "fraudulent joinder" is a misnomer, as it does not require a showing of actual fraud. "To show fraudulent joinder, the removing party must demonstrate either outright fraud in the plaintiff's pleading of jurisdictional facts or that there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court." Hartley v. CSX Transp., Inc., 187 F.3d 422, 424 (4th Cir. 1999) (internal quotations omitted).

7

parties' realigned positions.  See, e.g., Hidey v. Waste Sys. Int'l, Inc., 59 F. Supp. 2d 543 (D. Md. 1999); Liebau v. Columbia Cas. Co., 176 F. Supp. 2d 1236 (D. Kan. 2001); Jackson HMA, Inc. v. St. Paul Fire & Marine Ins. Co., 246 F. Supp. 2d 535 (S.D. Miss. 2003); Premier Holidays Int'l, Inc. v. Actrade Capital, Inc., 105 F. Supp. 2d 1336 (N.D. Ga. 2000).  If a defendant is disregarded or is realigned for jurisdictional purposes, that defendant need not consent to removal, and the Court will evaluate jurisdiction based on the positions of the parties after the realignment.  See, e.g., Liebau, 176 F. Supp. 2d at 1243; Premier Holidays, 105 F. Supp. 2d at 1341.

In applying these principles, "the burden of proof remains on the party invoking federal court jurisdiction." Roche v. Lincoln Property Co., 373 F.3d 610, 616 (4th Cir. 2004).  Thus, where a case is removed to federal court, the burden of proving that all of the requirements for removal jurisdiction have been met falls on the removing party.  See Griffin v. Holmes, 843 F. Supp. 81, 84 (E.D.N.C. 1993) ("The burden of proving that removal is proper is on the defendants, who removed the case, not on the plaintiff, who made the motion to remand.").  Therefore, in the present case, the Court will turn to an analysis of the parties' contentions in light of the legal standards discussed above in order to determine whether RLI has established that removal is proper in this case.

B.   Analysis and Application of Relevant Standards

In applying these standards in the present case, the Court notes again that the relevant issue is whether Brooks Pierce is properly joined and aligned as a defendant in this case, such that 28 U.S.C. § 1441(b) would bar removal and require remand, even though jurisdiction would otherwise exist pursuant to 28 U.S.C. § 1332(a).  Ohio Casualty contends that Brooks Pierce is properly joined as a defendant in this suit pursuant to the North Carolina Declaratory Judgment Act.  The North

8

Carolina Declaratory Judgment Act provides a legitimate and expeditious method for obtaining judicial construction of an agreement and the rights and liabilities of the parties to such an agreement. See, e.g., Bueltel v. Lumber Mut. Ins. Co., 134 N.C. App. 626, 518 S.E.2d 205 (1999). However, the Court concludes that even if Brooks Pierce was properly joined pursuant to the Declaratory Judgment Act, the Court must nevertheless determine whether the parties in this case should be realigned according to their sides in the dispute.

In undertaking this analysis, the Court must first determine the principal purpose of the suit and the primary issues in dispute in this case. However, in considering the nature of the claims asserted against Brooks Pierce as a defendant, the Court in its review of Ohio Casualty's Complaint can discern no actual claim brought by Ohio Casualty against Brooks Pierce. In its Complaint, Ohio Casualty brings a cause of action against RLI for breach of contract. Ohio Casualty also brings a cause of action for "Declaratory Relief" in which Ohio Casualty requests a "resolution of the substantial controversy between it and RLI . . . so that the rights, status and legal relations between Ohio Casualty and RLI concerning Brooks, Pierce's fees and expenses are affirmatively declared." (Compl. ¶ 26.) The Complaint includes a demand for damages against RLI, and asks that the Court "declare that RLI has a contractual duty to pay 50% of Brooks, Pierce's fees and expenses." (Compl. ¶ 3.) However, the Complaint alleges no cause of action against Brooks Pierce and makes no claim for damages or declaratory relief against Brooks Pierce. As noted above, a declaratory judgment action can provide a legitimate method for obtaining judicial construction of an agreement and the rights and liabilities of the parties to such an agreement. However, in the present case, Ohio Casualty has neither alleged such a dispute nor asked for such a construction with respect to its obligations as to Brooks Pierce. Therefore, in analyzing this case to determine the "principal

9

purpose" and "primary and controlling matter in dispute," the Court concludes that there is no dispute at all between Ohio Casualty and Brooks Pierce, and any possible claims by Ohio Casualty against Brooks Pierce are certainly not the principal or primary issues in dispute.

Moreover, the Court concludes that it is evident from the pleadings in this case that the primary issue in this case involves Ohio Casualty's and Brooks Pierce's efforts to obtain recovery from RLI pursuant to an agreement or agreements that RLI allegedly breached. Thus, the real dispute here concerns RLI's obligation to Brooks Pierce with respect to future payment of Brooks Pierce's fees and expenses, as well as whether RLI is obligated to reimburse Ohio Casualty for fifty percent (50%) of its payment of fees and expenses to Brooks Pierce.

Having thus determined the primary issue in the controversy, the Court must next align the parties according to their positions with respect to that issue. In this case, Ohio Casualty and Brooks Pierce are in union with respect to the primary issue in this case, that being a determination of RLI's obligation to pay Brooks Pierce directly or pay Ohio Casualty for the portion of Brooks Pierce's expenses that RLI allegedly agreed to pay. Brooks Pierce has asserted crossclaims against RLI that are based on facts and allegations similar to Ohio Casualty's claims against RLI. Thus, Ohio Casualty and Brooks Pierce are both asserting analogous claims against RLI. In contrast, the Court concludes based on a review of the pleadings that there is simply no dispute, either factual or legal, between Ohio Casualty and Brooks Pierce. Therefore, the Court finds that Ohio Casualty and Brooks Pierce should be aligned together against RLI. On this basis, the Court concludes that Brooks Pierce is more properly aligned as a plaintiff in this case for purposes of determining diversity.

Having adjusted the alignment as necessary, the Court must next evaluate the relevant jurisdictional issues, based on the parties as realigned. In this case, the Court concludes that to the extent that Brooks Pierce is aligned as a plaintiff for jurisdictional purposes, the provisions of 28 U.S.C. §1441(b) barring removal would not apply, because no defendant would be a resident of North Carolina. In addition, Brooks Pierce, as a plaintiff, would not be required to consent to removal. Having made these findings, the Court further notes that there is no question that the amount in controversy exceeds $75,000.00, and the parties concede that there is complete diversity as required by 28 U.S.C. § 1332(a). Therefore, this Court's exercise of jurisdiction in this matter is proper, and Plaintiff Ohio Casualty's Motion to Remand [Document #7] will be denied.

III. CONCLUSION

For the reasons discussed above, the Court concludes that the primary purpose of this lawsuit is to recover from RLI money owed to Ohio Casualty and Brooks Pierce based on an alleged breach of contract by RLI. No actual claims are asserted by Ohio Casualty against Brooks Pierce as a defendant. Therefore, Brooks Pierce is appropriately realigned as a plaintiff for jurisdictional purposes. The Court concludes that Brooks Pierce should be designated as a Plaintiff along with Ohio Casualty in future captioning and proceedings in this case. Based on these findings, the Court concludes that 28 U.S.C. § 1441(b) does not bar removal in this case, and RLI has established that removal was proper. Therefore, Plaintiff Ohio Casualty's Motion to Remand [Document #7] is DENIED.

An Order consistent with this Memorandum Opinion will be entered herewith.

This, the 12th day of October, 2005.

_____
United States District Judge